

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**JAMES NATHAN PIZER**

              Petitioner,

v.                                                       Criminal No. 2:11-cr-6

**UNITED STATES OF AMERICA,**

              Respondent.

*MEMORANDUM OPINION & ORDER*

Before the Court is Michael Donnell Butts' ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 49. The Government opposed the motion and Petitioner replied. ECF Nos. 50, 53. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

On January 19, 2011, Petitioner were named in a six-count Indictment related to a series of robberies. ECF No. 1. Petitioner was charged with Bank Robbery, in violation of 18 U.S.C. 2113(a) and (d) (Counts One through Five) and Attempt to Enter Bank to Commit Bank Robbery, in violation of 18 U.S.C. 2113(a) (Count Six). *Id.* On April 26, 2011, Petitioner pled guilty to Count Five. ECF Nos. 21, 22. According to his Presentencing Report ("PSR"), Petitioner, on November 5, 2010, robbed the Bank of Hampton Roads using a H&K (Heckler and Koch) semi-automatic BB/pellet gun. ECF No. 41 at ¶¶ 9-10. During the robbery, Petitioner pointed the handgun in the air and then at the clerks. Petitioner was attributed with stealing $7,140. *Id.* Petitioner admitted responsibility and admitted that he robbed five banks between July 22, 2010, and November 5, 2010. *Id.* at ¶ 22. In his PSR, Petitioner reported his overall health as good and noted no history of any serious or chronic medical conditions. *Id.* at ¶ 102. Petitioner was assessed

1

a total offense level of 31, a criminal history category VI, and a recommended guideline provision of 188 to 235 months imprisonment *Id.* at ¶¶ 140-141. On October 31, 2011, the Court imposed a sentence of 220 months imprisonment followed by five years of supervised release as well as $22,502.00 in restitution. ECF Nos. 30, 31, 32. Petitioner's current projected release date is July 24, 2033 and he is currently incarcerated at Williamsburg FCI, in South Carolina.

On December 4, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 38. On February 17, 2021, Petitioner filed the motion through counsel. ECF No. 49. The Government opposed the motion and Petitioner replied. ECF Nos. 50, 53.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic. ECF Nos. 38, 49. At age 53, Petitioner argues that his underlying conditions place him at high risk for serious illness or death if he contracts the COVID-19 virus. *Id.* Accordingly, Petitioner requests that this Court grant him compassionate release and allow him to begin supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United*

*States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP

3

Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion with the Court. On October 18, 2020, Petitioner submitted a Request for Reduction in Sentence Form to the Warden at Williamsburg FCI. ECF No. 49 at Exhibit 2. On November 20, 2020, the Warden denied Petitioner's request. *Id.* at Exhibits 1 and 3. Petitioner filed his Motion for Compassionate release on December 4, 2021. *Id.* Thus, more than 30 days passed since Petitioner filed his request with the Warden

#### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling

4

reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. According to Petitioner's medical records, at age 53, he has a history of hyperlipidemia (hypertension), pre-diabetes, cervical degenerative disc disease with left upper extremity neuralgia, metabolic viral disorder, and prior Hepatitis C (treated and cured on April 2019). *See* ECF No. 50 at Exhibit 3; *see also,* ECF No. 52 (Sealed). Petitioner's conditions appear to be under control. For example, in November 2020, his medical records show that he was prescribed medication to control his hypertension. However, Petitioner denied being prescribed pain medication for his neuralgia because he indicated that his "pain is not that bad this point." *Id.* In June 2020, Petitioner successfully treated and cured his Hepatitis C. *Id.* According to the Centers for Disease Control and Prevention, individuals type II diabetes are at an increased risk for severe illness from COVID-19.[1] However, Petitioner does not suffer from Type II diabetes but, rather, has been diagnosed as prediabetic which can be controlled with diet and exercise. Furthermore,

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html

individuals with hypertension (commonly known as hyperlipidemia) might also be at an increased risk for severe illness if they contract the virus. Accordingly, the Court finds that Petitioner has not presented evidence showing "extraordinary or compelling reasons" that he is at particularized risk of serious illness should be contract COVID-19.

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. As of March 16, 2021, the BOP has reported a total of 19 current (183 recovered, 3 deaths) positive cases of COVID-19 for inmates and 2 current (54 recovered) for staff at FCC Coleman II.[2] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[3] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner admitted responsibility and admitted that he robbed five banks between July

---

[2] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/
[3] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

22, 2010, and November 5, 2010. ECF No. 41 at ¶ 22. However, Petitioner pled guilty to only one count in which he robbed the Bank of Hampton Roads using a H&K (Heckler and Koch) semi-automatic BB/pellet gun. *Id.* at ¶¶ 9-10. During the robbery, Petitioner pointed the handgun in the air and then at the clerks. Petitioner was attributed with stealing $7,140. *Id.* in all, Petitioner stole a total of $22,502. *Id.* at ¶ 13.

Petitioner also has an extensive career criminal record, starting at age 15, when he was charged for Possession of Marijuana, two counts of Petit Larceny, and a violation of probation. *Id.* at ¶¶ 32-33. Then, from ages 18 to 42, Petitioner received multiple convictions which include Aggravated Assault on a Police Officer; Fail to Appear; Driving Suspended before Giving Proof; Driving Without Operators License; Profane Threatening Language over Telephone; Disorderly Conduct; Interfering with Police; Petit Larceny; Grand Larceny; General Escape from Custody; Assault & Batter; Unauthorized Use of Vehicle; Robbery; Receiving Stolen Property; Statutory Burglary; Elude Police; Grand Larceny Automobile; Escape Without Force; Possession of Stolen Vehicle; and Shoplifting. *Id.* at ¶¶ 34-65 Accordingly, Petitioner was assessed a Criminal History Category of VI. *Id.* at ¶¶ 36-86. As a result of his crimes and career criminal history, Petitioner was originally sentenced 220 months imprisonment followed by five years of supervised release as well as $22,502.00 in restitution. ECF Nos. 30, 31, 32. To date, Petitioner has only served about fifty percent of his sentence. Therefore, given the seriousness of Petitioner's crimes and criminal history, the Court finds that Petitioner's release would not promote the respect for law or provide adequate deterrence. Furthermore, the Court finds that Petitioner is a risk to the community.

On the other hand, Petitioner has demonstrated some progress while in BOP custody. Petitioner's disciplinary record shows only two incidents involving allowing another inmate to use his phone and the possession of an unauthorized item. *See* ECF No. 50 at Exhibit 5. Moreover,

7

Petitioner has completed multiple educational programs. *Id.* at Exhibit 4. Overall, however, the § 3553(a) factors do not weigh in his favor. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
March __, 2021

_____
UNITED STATES DISTRICT JUDGE